IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division



|  |  |
|---|---|
| BARBARA LOE ARTHUR, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 01:09-cv-1398 |
| PAUL A. OFFIT, M.D., <u>et al.</u>, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This matter comes before the Court on Defendants' Motions to Dismiss for Failure to State a Claim. For the reasons set forth, the Motions to Dismiss should be granted.

This action arises out of a brief passage in a lengthy magazine article profiling Defendant Paul Offit, M.D., a Philadelphia pediatrician and infectious disease specialist.

Plaintiff Barbara Loe Arthur (also known as Barbara Loe Fisher) is the co-founder and acting president of the National Vaccine Information Center ("NVIC"). NVIC is a non-profit organization founded in 1982 and is dedicated to the prevention of vaccine injuries and deaths through public education. Plaintiff is a public interest advocate, public speaker, and media source for information about mandatory vaccinations.

Defendant Condé Nast Publishing Inc. ("CNP") publishes a

number of nationally circulated magazines, including *The New Yorker*, *Vanity Fair*, *Architectural Digest*, *GQ*, and, as is relevant here, *Wired*. Defendant Amy Wallace is a freelance writer who has lived and worked in California since 1989. This action arises from an article published in the November 2009 issue of *Wired* and on its Internet website, Wired.com, entitled "An Epidemic of Fear: One Man's Battle Against the Anti-Vaccine Movement" ("the 2009 Wired article") by Ms. Wallace. The article focuses on the public debate over mandatory vaccinations of infants, children and adolescents.

Ms. Arthur has filed suit claiming that a two-word quotation ("She lies") in the 2009 Wired article constitutes a false statement of fact about her that will cause people to conclude she is not a person of honesty or integrity. The article is a profile of Defendant Offit, who is a "leading national advocate for mandatory vaccination" and someone "to whom many in government, industry, and the media turn for information." Offit is a physician employed by the Children's Hospital of Philadelphia and is a Professor and Chief of Infectious Diseases in the Department of Pediatrics at the University of Pennsylvania School of Medicine. He is also the co-inventor of a vaccination for rotavirus, a disease which causes severe diarrhea and dehydration in young children, sometimes resulting in hospitalization and/or death.

-2-

The article's profile of Offit is placed in the larger context of the public debate over systematic vaccination of children recommended by the Centers for Disease Control and Prevention, including Offit's advocacy in favor of the vaccine protocol and opponents' often sharp criticism both of Offit's position on this issue as well as of him personally.  According to the article, "Offit has become the main target of a grassroots movement that opposes the systematic vaccination of children and the laws that require it," claiming that vaccines can cause autism and/or otherwise injure children. In response, the article reports, Offit "boldly states - in speeches, in journal articles, and in his 2008 book *Autism's False Prophets* - that vaccines do not cause autism or autoimmune disease or any of the other chronic conditions that have been blamed on them," an assertion he "supports . . . with meticulous evidence." As Plaintiff describes it in her Complaint, the article "depicts" Offit "as a lone and heroic pediatrician/scientist who is the primary public voice in favor of mandatory vaccination, a position described as rational and science-based."

The article reviews in detail the history of how widespread vaccinations have eradicated diseases like smallpox, polio, rubella, measles, and the bacteria that causes Hib meningitis. The article also describes several recent scientific studies concluding that parents' decisions to opt out of vaccination

programs have resulted in increased outbreaks of serious diseases - including, for example, pertussis, commonly known as whooping cough - "a highly contagious bacterial disease that causes violent coughing and is potentially lethal to infants," the incidence of which has increased from 1,000 cases in 1976 to 24,000 cases in 2004. The article also examines the possibility that parents in the anti-vaccine camp, who first see evidence of autism at the same age as many vaccines are administered (18 to 24 months), are "ignor[ing] the old dictum 'correlation does not imply causation' and stubbornly persist[ing] in associating proximate phenomena." And, the article addresses several studies in which "scientists have chased down some of th[e] theories" advanced by the anti-vaccine movement, but have not found any link between vaccines and conditions like autism.

The article observes that "[b]eing rational takes work, education, and a sober determination to avoid making hasty inferences, even when they appear to make perfect sense." The article thus comes out "in favor of the general safety of vaccines and a presumed medical necessity for mandatory vaccination."

In addition to an extended discussion of the merits of the vaccination issue, the article also describes the harsh personal attacks lodged against Offit by his opponents. Its first sentence states, "To hear his enemies talk, you might think Paul Offit is

-4-

the most hated man in America." As the article goes on to describe, Offit's critics point to the royalty he receives for having co-invented the rotavirus vaccine as "Exhibit A in the case against" him, supposedly "proving his irredeemable bias and his corrupted point of view." The article also describes how he has been physically threatened by critics, as well as how he is the subject of a hostile website (pauloffit.com) and how people regularly tamper with the Wikipedia entry about him.

It is in this context that, as part of the 7,500-plus word profile, a few paragraphs are devoted to one of his critics, Plaintiff Barbara Loe Arthur. The Complaint states that Ms. Arthur "is the co-founder and acting president of the National Vaccine Information Center," a "non-profit organization dedicated . . . to defending patients' rights to voluntary, fully informed consent to vaccination." The Complaint also lists Ms. Arthur's accomplishment such as the three books she wrote on the subject of vaccinations, her service on a number of governmental advisory committees, her biweekly newsletter, and her frequent appearances on "national radio and television programs, including all major networks" to advocate her position as well as her prolific authorship of articles on the subject. The article portrays Ms. Arthur as the anti-vaccine "movement's brain" and describes her organization as "the largest, oldest, and most influential of the watchdog groups that oppose universal vaccination." The article

-5-

characterizes Ms. Arthur as a "skilled debater," who "has long been the media's go-to interview for what some in the autism arena call 'parents rights'" and whose speech at an autism conference in Chicago was delivered with "characteristic flair." In that speech, Plaintiff "mentioned Offit frequently" and "cast him as a man who walks in lockstep with the pharmaceutical companies and demonizes caring parents."

As the Complaint puts it, "Offit disagrees adamantly with the . . . positions taken by Plaintiff Arthur and advocated by her and by NVIC." In response to those positions, Defendant Offit is quoted in the article as saying that "'Kaflooey theories' make him crazy" and that Plaintiff "makes him particularly nuts as in 'You just want to scream'" because "She lies." He goes on to say that Plaintiff "inflames people against me. And wrongly. I'm in this for the same reason she is. I care about kids. Does she think that Merck is paying me to speak about vaccines? Is that the logic?"

In her Complaint, Plaintiff contends that, Defendant Offit's statement "she lies," is defamatory and that he and the Magazine Defendants have published a false statement of fact and have committed defamation per se, causing her to appear "odious, infamous, and ridiculous." However, several Fourth Circuit cases make clear that including a remark by one of the key participants in a heated public-health debate stating that his adversary

-6-

"lies" is not an actionable defamation. Indeed, both the nature of the statement – including that it was quoting an advocate with a particular scientific viewpoint and policy position – and the statement's context – a very brief passage in a lengthy description of an ongoing, heated public health controversy – confirms that this is a protected expression of opinion.

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires dismissal of a Complaint for failure to state a claim where, as here, a Plaintiff cannot obtain the relief she seeks even if all well-pleaded factual allegations are accepted as true and the reasonable inferences derived therefrom are viewed in the light most favorable to her. <u>Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.</u>, 591 F.3d 250, 255 (4th Cir. 2009). Dismissal is proper where such a conclusion is apparent from the face of the pleading and from a review of "other sources courts ordinarily examine when ruling on [such] motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007). In evaluating such motions, courts do not credit a plaintiff's "legal conclusions, [recitations of] elements of a cause of action, and bare assertions devoid of further factual enhancement," and must "decline to consider 'unwarranted inferences, unreasonable conclusions, or arguments'" contained in

-7-

the complaint. <u>Nemet Chevrolet, Ltd. v. Consumeraffairs.com,</u>
<u>Inc.</u>, 591 F.3d at 255(citation omitted).

The importance of "evaluat[ing] complaints early in the
process" in response to Rule 12(b)(6) motions has been emphasized
by the Supreme Court and the Fourth Circuit in as a way to deal
with "the recognized problems created by 'strike suits' and the
high costs of frivolous litigation." <u>Francis v. Giacomelli</u>, 588
F.3d 186, 193 (4th Cir. 2009) (citing, <u>inter</u> <u>alia</u>, <u>Ashcroft v.</u>
<u>Iqbal</u>, 129 S. Ct. 1937, 1949 (2009)). Moreover, because the
defense of baseless defamation claims imposes an additional cost,
in the form of potentially deterred speech, federal courts have
historically given close scrutiny to pleadings in libel actions.
<u>See</u> 5B Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE &
PROCEDURE 3D § 1357 ("When the claim alleged is a traditionally
disfavored 'cause of action,' such as . . . libel, or slander,
the courts [tend] to construe the complaint by a somewhat
stricter standard and [are] more inclined to grant a Rule
12(b)(6) motion to dismiss."). As a result, courts in Virginia
and the Fourth Circuit routinely dismiss at the outset defamation
claims that are based on constitutionally
protected speech by media defendants.

Because of their effect on speech about important matters of
public concern, defamation claims are circumscribed by the
constitution and common law of Virginia, as well as by the First

-8-

Amendment to the U.S. Constitution. Here, the publication at issue indisputably involves a matter of substantial public concern - namely, the safety of vaccines and the risks and benefits of childhood immunization protocols. As a result, the constitutional and common law protections - under both Commonwealth and federal law - here are at their zenith. See Chapin v. Knight-Ridder, Inc., 993 F.2d 1087, 1091-92 (4th Cir. 1993) ("[T]he First Amendment's press and speech clauses greatly restrict the common law where the defendant is a member of the press, the plaintiff is a public figure, or the subject matter of the supposed libel touches on a matter of public concern. Where, as here, all of these considerations are present, the constitutional protection of the press reaches its apogee.") (citation omitted); Chaves v. Johnson, 230 Va. 112, 119, 335 S.E.2d 97, 102 (1985) ("[A]rticle 1, section 12 of the Constitution of Virginia protect[s] the right of the people to teach, preach, write, or speak any such opinion, however ill-founded, without inhibition by actions for libel and slander.").

To state a claim for defamation in Virginia, a plaintiff must plead that the defendant (i) published (ii) an actionable statement (iii) with the requisite degree of intent. See, e.g., Marroquin v. ExxonMobil Corp., No. 1:08-CV-391, 2009 WL 1529455, at *8 (E.D. Va. May 27, 2009) (citing Chapin, 993 F.2d at 1092).

-9-

Whether a statement is "actionable" is a threshold determination to be decided as a matter of law by the court. Id. That legal determination requires the court to assess, inter alia, whether the statement can "reasonably be interpreted as stating actual facts," as well as whether it "contain[s] a provably false factual connotation." Yeagle v. Collegiate Times, 255 Va. 293, 295, 497 S.E.2d 136, 137 (1998). See also Fuste v. Riverside Healthcare Ass'n, Inc., 265 Va. 127, 132-33, 575 S.E.2d 858, 861-62 (2003) (statements must be "capable of being proven true or false" to be actionable); SRA Int'l, Inc. v. McLean, No. 1:07-CV-0935, 2007 WL 4766697, at *1 (E.D. Va. Dec. 6, 2007) ("'[S]peech which does not contain a provably false factual connotation, or a statement which cannot reasonably be interpreted as stating actual facts about a person cannot form the basis of a common law defamation action.'") (citations omitted); Marroquin, 2009 WL 1529455, at *8 ("Statements of opinion are 'relative in nature and depend largely upon the speaker's viewpoint,' whereas statements of fact are those which are 'capable of being proven true or false.'") (citation omitted).

As a result, these two complementary requirements for actionable defamation - (1) a statement of actual fact that is (2) capable of being proven true or false - operate together to immunize speakers against liability for expressions of "opinion."

-10-

Indeed, both the Virginia constitution and the First Amendment to
the U.S. Constitution compel the imposition of these twin
requirements protecting expressions of opinion. See <u>Hyland v.
Raytheon Tech. Servs. Co.</u>, 277 Va. 40, 47, 670 S.E.2d 746, 750
(2009) (Virginia Constitution); <u>Milkovich v. Lorain Journal Co.</u>,
497 U.S. 1, 20 (1990) (U.S. Constitution); <u>Fuste</u>, 265 Va. at 132,
575 S.E.2d at 861 (expressions of opinion "are protected by the
First Amendment of the Constitution of the United States and
Article 1, § 12 of the Constitution of Virginia"); <u>CACI Premier
Tech., Inc. v. Rhodes</u>, 536 F.3d 280, 293-94 (4th Cir. 2008) ("The
First Amendment['s] . . . safeguard includes protection for
'rhetorical hyperbole, a vigorous epithet' and 'loose,
figurative, or hyperbolic language,'" which "is necessary to
'provide[ ] assurance that public debate will not suffer for lack
of imaginative expression . . . .'") (quoting <u>Milkovich</u>, 497 U.S.
at 20-21).

    In analyzing this issue, courts must focus on both "the
plain language of the statement" and "the context and general
tenor of its message," keeping in mind that the "'verifiability
of the statement'" is a touchstone "because a statement not
subject to objective verification is not likely to assert actual
facts." <u>Snyder v. Phelps</u>, 580 F.3d 206, 219 (4th Cir. 2009)
(citations omitted). A statement is therefore nonactionable as a
matter of law when - considering its language, context, and tenor

-11-

– the speaker is "plainly express[ing] 'a subjective view, an interpretation, a theory, conjecture or surmise, rather than . . . claim[ing] to be in possession of objectively verifiable . . . facts.'" <u>Biospherics, Inc. v. Forbes, Inc.</u>, 151 F.3d 180, 186 (4th Cir. 1998) (citation omitted) (affirming order granting motion to dismiss).

In this case, the article's quotation of Defendant Offit's comment that Plaintiff "lies" cannot reasonably be understood to suggest, as the Complaint alleges, that Plaintiff is "a person lacking honesty and integrity . . . [who should be] shunned or excluded by those who seek information and opinion upon which to rely." Rather, the context of the remark – in a lengthy article describing an emotional and highly charged debate about an important public issue over which Defendant Offit and Plaintiff have diametrically opposed views – plainly signals to readers that they should expect emphatic language on both sides and should accordingly understand that the magazine is merely reporting Defendant Offit's personal opinion of Ms. Arthur's views.

In particular, the language immediately surrounding the challenged statement, in which Defendant Offit decries "Kaflooey theories" that make him "want to scream," is precisely the kind of "loose, figurative" language that tends to "negate[ ] any impression that the speaker is asserting actual facts." <u>Snyder</u>,

-12-

580 F.3d at 220. Against this contextual backdrop, the declaration "she lies" is plainly understood as an outpouring of exasperation and intellectual outrage over Plaintiff's ability to gain traction for ideas that Defendant Offit believes are seriously misguided, and not as a literal assertion of fact. Schnare v. Ziessow, 104 Fed. App'x 847, 851-52 ("A reasonable reader would .  . . recognize this 'accusation' of lying as just an 'expression of outrage.'"). In other words, the remark by Defendant Offit is, on its face, merely an "'imaginative expression of the contempt felt' toward his adversary," Id. at 852-53 (citation omitted), which can only be viewed as "an impassioned response to the positions taken by [that adversary], and nothing more." Faltas v. State Newspaper, 928 F. Supp. 637, 648 (D.S.C. 1996) aff'd, 155 F.3d 557 (4th Cir. 1998).

From the perspective of Defendants CNP and Ms. Wallace, this impassioned response by Defendant Offit toward Plaintiff was itself illustrative of the rough-and-tumble nature of the controversy over childhood inoculations and therefore worthy of mention in the Wired article, which sought to highlight, among other things, the intense nature of the vaccine debate. Given that context, publishing the quotation from Defendant Offit that Plaintiff "lies" is simply not actionable. Such a statement is much like the assertions of commercial inferiority that the Virginia Supreme Court considered in Chaves and dismissed as

-13-

nonactionable because the remarks - that the plaintiff had "no
past experience and [charged customers] an unjustifiably high
fee" - were merely "relative statement[s] of opinion, grounded
upon the speaker's obvious bias." 230 Va. at 116-19, 335 S.E.2d
at 100-01. So, too, here is the comment by Defendant Offit the
very sort that, in the context of a heated and very public
scientific debate, would "fall on [listeners'] ears like
repetitive drumbeats." Id. at 119, 335 S.E.2d at 101. It plainly
is no more than a relative charge based upon Defendant Offit's
evident viewpoint (avowedly antithetical to Plaintiff's) and thus
could not reasonably be interpreted as stating actual facts.

Moreover, in the context of the *Wired* article, the statement
"she lies" lacks the provably false content that is required to
support a defamation action. Not only does Plaintiff's claim of
the statement's falsity invite an open-ended inquiry into
Plaintiff's veracity, but it also threatens to ensnare the Court
in the thorny and extremely contentious debate over the perceived
risks of certain vaccines, their theoretical association with
particular diseases or syndromes, and, at bottom, which side of
this debate has "truth" on their side. That is hardly the sort of
issue that would be subject to verification based upon a "core of
objective evidence." See Milkovich, 497 U.S. at 21.

The same prospect of litigation over unresolved - and
perhaps unresolvable - scientific arguments was among the reasons

-14-

that the accusations of lying in <u>Faltas</u> were deemed to be nonactionable. <u>See</u> 928 F. Supp. at 649 ("[T]he underlying issue was not one easily susceptible (if at all) to 'proof' one way or the other."). Courts have a justifiable reticence about venturing into the thicket of scientific debate, especially in the defamation context.

Plaintiff may wish to defend in Court the credibility of her conclusions about the dangers of vaccines, the validity of the evidence she offers in support of those theories, and the policy choices that flow from those views – as well as her own credibility for having advanced those positions. These, however, are academic questions that are not the sort of thing that courts or juries resolve in the context of a defamation action. Rather, an actual statement of fact that is capable of being proven true or false is required as a matter of law. In this context, Plaintiff has not alleged such a statement and has therefore failed to state a claim upon which relief may be granted. An appropriate Order shall issue.

/s/
Claude M. Hilton
United States District Judge

Alexandria, Virginia
March  /0 , 2010

-15-